1

2

3

4

5

6

7

8                   UNITED STATES DISTRICT COURT

9              FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   CAPITAL EXPRESS LINES, INC.,              No. 2:24-cv-01639-DAD-DB

12              Plaintiff,

13        v.                                   ORDER GRANTING DEFENDANT'S
                                              MOTION TO DISMISS PLAINTIFF'S FIRST
14   JPMORGAN CHASE BANK, N.A.,                AMENDED COMPLAINT

15              Defendant.                     (Doc. No. 16)

16

17

18        This matter is before the court on the renewed motion to dismiss filed by defendant

19   JPMorgan Chase Bank N.A. ("defendant bank") on February 24, 2025.  (Doc. No. 16.)  The

20   pending motion was taken under submission on the papers on March 24, 2025.  (Doc. No. 19.)

21   For the reasons explained below, the court will grant defendant's motion.

22                                **BACKGROUND**

23        On May 2, 2024, plaintiff Capital Express Lines, Inc. filed the complaint initiating this

24   lawsuit against defendant JPMorgan Chase Bank, N.A. and Doe defendants 1–10 in the

25   Sacramento County Superior Court.  (Doc. No. 1-1 at 3–6.)  Defendant removed the action to this

26   federal court on June 7, 2024.  (Doc. No. 1.)  On July 12, 2024, defendant filed its first motion to

27   dismiss plaintiff's complaint.  (Doc. No. 5.)  On January 7, 2025, the court granted in part and

28   denied in part defendant's motion, dismissing plaintiff's complaint in part with leave to amend.

                                        1

1    (Doc. No. 12.)  Plaintiff filed its first amended complaint ("FAC") on January 26, 2025.  (Doc.

2    No. 13.)  In its FAC, plaintiff alleges as follows.

3            Plaintiff is a transportation business.  (*Id.* at ¶ 8.)  Plaintiff receives payments from its

4    customers via check and Automated Clearing House ("ACH").  (*Id.*)  Plaintiff provides ACH

5    information to customers to facilitate these payments.  (*Id.*)  A third party opened an account with

6    defendant bank, fraudulently representing that they were plaintiff.  (*Id.* at ¶ 15.)  "While [plaintiff]

7    was not actually in privity with" defendant in the opening of the account, defendant "had the

8    intention of forming a direct relationship with [plaintiff] at the time of opening which should

9    create a heightened duty to the intended beneficiary."  (*Id.* at ¶ 16.)  The account was fraudulently

10   created through defendant with the specific intent of taking funds that were lawfully earned by

11   plaintiff.  (*Id.* at ¶¶ 9, 15.)  In March 2024, plaintiff became aware that some of its clients had

12   issued an ACH and/or checks to the third-party account.  (*Id.* at ¶ 9.)  Plaintiff's clients intended

13   to deposit these funds with plaintiff but instead the funds were deposited in the third-party

14   account, resulting in a loss to plaintiff.  (*Id.* at ¶ 12.)  Plaintiff immediately informed defendant,

15   requesting that the third-party account be closed and/or suspended, that the funds be directed to

16   plaintiff, and that plaintiff be given the opportunity to review the account's banking activity in

17   order to protect plaintiff against further financial injury and to assess the nature and scope of the

18   risk.  (*Id.* at ¶ 9.)  Defendant indicated that they were investigating the matter.  (*Id.*)  In April

19   2024, plaintiff became aware of additional deposits into this fraudulent account with defendant.

20   (*Id.* at ¶ 10.)

21           Based on these allegations, plaintiff brings two claims against defendant in this action—

22   restitution and accounting.

23           On February 24, 2025, defendant filed the pending motion to dismiss plaintiff's FAC in its

24   entirety pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 16.)  On March 6, 2025,

25   plaintiff filed an opposition to the motion, and on March 17, 2025, defendant filed its reply

26   thereto.  (Doc. Nos. 17, 18.)

27   /////

28   /////

1

**LEGAL STANDARD**

2      The purpose of a motion to dismiss pursuant to Rule 12(b)(6) is to test the legal

3   sufficiency of the complaint.  *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir.

4   1983).  "Dismissal can be based on the lack of a cognizable legal theory or the absence of

5   sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901

6   F.2d 696, 699 (9th Cir. 1990).  A plaintiff is required to allege "enough facts to state a claim to

7   relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A

8   claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw

9   the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v.*

10  *Iqbal*, 556 U.S. 662, 678 (2009).

11      In determining whether a complaint states a claim on which relief may be granted, the

12  court accepts as true the allegations in the complaint and construes the allegations in the light

13  most favorable to the plaintiff.  *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).  However,

14  the court need not assume the truth of legal conclusions cast in the form of factual allegations.

15  *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643 n.2 (9th Cir. 1986).  While Rule 8(a) does not

16  require detailed factual allegations, "it demands more than an unadorned, the-defendant-

17  unlawfully-harmed-me accusation."  *Iqbal*, 556 U.S. at 678.  A pleading is insufficient if it offers

18  mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."

19  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 676 ("Threadbare recitals of the elements

20  of a cause of action, supported by mere conclusory statements, do not suffice.").  Moreover, it is

21  inappropriate to assume that the plaintiff "can prove facts that it has not alleged or that the

22  defendants have violated the . . . laws in ways that have not been alleged."  *Associated Gen.*

23  *Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983).

24  In ruling on a motion to dismiss under Rule 12(b)(6), the court is permitted to consider materials

25  outside the pleadings if those documents are attached to the complaint, incorporated by reference

26  in the complaint, or are matters of which judicial notice is taken.  *United States v. Ritchie*, 342

27  F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be

28  /////

3

1    incorporated by reference into a complaint if the plaintiff refers extensively to the document or

2    the document forms the basis of the plaintiff's claim.").

3                                  **DISCUSSION**

4    **A.        Whether the California Commercial Code Displaces Plaintiff's Claims**

5            In its motion to dismiss, defendant argues that both of plaintiff's common law claims for

6    restitution and accounting are displaced by the California Commercial Code, divisions 3 and 11.

7    (Doc. No. 16 at 10–12.)  Defendant contends that both divisions of the California Commercial

8    Code apply because plaintiff alleges that its customers mistakenly paid the third-party fraudster

9    using "ACH and/or checks."  (Doc. No. 13 at ¶ 9); *see Motallebi v. Bank of Am. Corp.*, No. 20-

10   cv-04618-DSF-RAO, 2020 WL 13327501, at *8 (C.D. Cal. Sept. 8, 2020) ("Under the UCC,

11   checks and wire transfers are treated separately.").

12           1.      ACH Payments

13           As an initial matter, the court agrees with defendant that ACH payments are fund transfers

14   covered by the California Commercial Code, division 11.  Cal. Com. Code § 11105(a)(5)

15   ("'Funds-transfer system' means a wire transfer network, automated clearinghouse, or other

16   communication system of a clearinghouse or other association of banks through which a payment

17   order by a bank may be transmitted to the bank to which the order is addressed."); Unif. Com.

18   Code § 4A-104, cmt. 6 (clarifying that payments made through "automated clearing house" are

19   "covered by Article 4A"); *Zengen, Inc. v. Comerica Bank*, 41 Cal. 4th 239, 252 (2007) (noting

20   that comments to 4A of the Uniform Commercial Code ("UCC") are "persuasive in interpreting"

21   the corresponding provisions of the California Commercial Code because the California

22   legislature "adopted article 4A of the Uniform Commercial Code exactly as written").

23           "The UCC, as codified in division 11 of the California Commercial Code, governs funds

24   transfers and displaces common law claims 'in two specific areas: (1) where the common law

25   claims would create rights, duties, or liabilities inconsistent with division 11; and (2) where the

26   circumstances giving rise to the common law claims are specifically covered by the provisions of

27   division 11.'"  *Chen v. JPMorgan Chase Bank, N.A.*, 745 F. Supp. 3d 1025, 1035 (C.D. Cal.

28   2024) (quoting *Zengen, Inc.*, 41 Cal.4th at 249).

1    Here, plaintiff alleges that defendant accepted into a third-party fraudster's account ACH

2    payments from plaintiff's customers that the customers intended to deposit with plaintiff. (Doc.

3    No. 13 at ¶¶ 9, 12.)  It is clear that "[d]ivision 11 specifically addresses when a receiving bank

4    may be liable for accepting a payment order." *BPi Bright Power, Inc. v. Umpqua Holding Corp.*,

5    669 F. Supp. 3d 904, 906 (N.D. Cal. 2023) (citations omitted); *see also* Cal. Com. Code § 11212

6    ("Liability based on acceptance arises only when acceptance occurs as stated in Section 11209,

7    and liability is limited to that provided in this division.").  Therefore, to the extent plaintiff's

8    "common law claims" are premised on defendant accepting the ACH payments, they "are

9    displaced by division 11[.]" *BPi Bright Power, Inc.*, 669 F. Supp. 3d at 906.

10    Plaintiff argues that division 11 does not apply so as to preempt plaintiff's claims because

11    plaintiff was not a party to the transactions.  (Doc. No. 17 at 5–6.)  Plaintiff does not explain the

12    import of this distinction that it draws.  Indeed, at least one California district court has concluded

13    that common-law claims such as those brought by plaintiff here are displaced to the extent they

14    are "based solely upon the wire transfers" regardless of the fact that, like here, the plaintiff was

15    actually the intended recipient of the funds diverted by the third-party imposter.  *Venture Gen.*

16    *Agency, LLC v. Wells Fargo Bank, N.A.*, No. 19-cv-02778-TSH, 2019 WL 3503109, at *1, *4

17    (N.D. Cal. Aug. 1, 2019); *see also Deaconess Associations, Inc. v. Wells Fargo Bank, N.A.*, No.

18    3:21-cv-01854-YY, 2022 WL 7690568, at *6 (D. Or. Sept. 19, 2022) (finding an identical Oregon

19    Commercial Code provision displaced the common law claim brought by the intended beneficiary

20    of a fraudulently diverted wire transfer), *report and recommendation adopted,* No. 3:21-cv-

21    01854-YY, 2022 WL 7584478 (D. Or. Oct. 13, 2022).

22    Plaintiff also argues that, in addition to processing the ACH payments, defendant

23    wrongfully allowed the third-party fraudster to open the fraudulent account, and defendant later

24    received notice of the nature of the transactions yet failed to take appropriate action, including

25    (1) closing or freezing the fraudulent account or (2) returning the funds to plaintiff.  (Doc. No. 17

26    at 6.)  As to the latter, defendant's purported failure to return the funds to plaintiff falls within the

27    purview of division 11, which "sets forth the respective rights, duties and liabilities of the parties

28    upon the issuance and acceptance of a payment order under division 11." *Zengen, Inc.*, 41 Cal.

1    4th at 254; *see also Chen*, 745 F. Supp. 3d at 1036 (finding that the gravamen of each of the

2    plaintiffs' causes of action was that the defendants should not have accepted the fraudulent

3    payment orders even where the plaintiffs alleged "that each Defendant breached a contract by

4    failing to reimburse Plaintiffs for unauthorized transactions upon receiving adequate notice"); *NT*

5    *Cap. Mgmt. LLC v. Truist Bank, NA*, No. 2:24-cv-09461-HDV-AJR, 2025 WL 1544123, at *2

6    (C.D. Cal. Mar. 24, 2025) (finding that the plaintiffs' claims for negligence and money had and

7    received were preempted by the California Commercial Code where the plaintiff alleged that the

8    defendant "fail[ed] to identify and prevent the processing of the wire transfers into the 'wrong'

9    account, and [refused] to return the funds").

10         Plaintiff's remaining allegations—that defendant allowed the third-party fraudster to open

11   the fraudulent account and later received notice of the nature of the transactions yet refused to

12   close or freeze the fraudulent account—do appear to fall outside the purview of division 11.  As

13   one district court has stated:

14             Here, as S&S points out, its claims are not based solely on WFB's
               having processed the Initial Wire.  Specifically, S&S's claims are
15             based on the following additional alleged acts or omissions of WFB:
               (1) allowing Kuntz, prior to the Initial Wire, to open and maintain
16             the account; (2) allowing Kuntz, after the Initial Wire, to transfer the
               subject funds to other banks; and (3) not assisting S&S when, after a
17             number of such transfers, S&S asked WFB to freeze Kuntz's account
               and attempt to recall the transferred funds.
18

19    *S&S Worldwide, Inc. v. Wells Fargo Bank*, 509 F. Supp. 3d 1154, 1162 (N.D. Cal. 2020)

20   (citations omitted); *see also Eisenberg v. Wachovia Bank, N.A.*, 301 F.3d 220, 223–24 (4th Cir.

21   2002) ("Eisenberg's allegations of negligence are not limited to Wachovia's conduct in

22   processing the Fedwire transfer order.  Eisenberg also alleged that Wachovia is negligent by

23   reason of allowing Reid to open the 'dba Bear Stearns' bank account, failing to discover Reid's

24   improper use of the account and failing to train its employees to recognize and prevent fraud.");

25   *Venture Gen. Agency, LLC*, 2019 WL 3503109, at *4 ("Here, too, Plaintiffs' negligence claim is

26   not based solely on the wire transfers but also on Wells Fargo's subsequent actions.").

27         However, in its reply, defendant argues that plaintiff's claims asserted in this case for

28   restitution and an accounting are predicated solely on defendant's alleged improper acceptance,

1  and alleged retention, of the payments.  (Doc. No. 18 at 4.)  As discussed above, claims

2  predicated on such allegations are displaced by the California Commercial Code.  Indeed, stating

3  a claim for restitution requires that the plaintiff allege "that the defendant received . . . a benefit at

4  the plaintiff's expense," *ESG Cap. Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016),

5  and stating a claim for an accounting requires that the plaintiff allege "that some balance is due

6  the plaintiff," *Sass v. Cohen*, 10 Cal. 5th 861, 869 (2020) (quoting *Teselle v. McLoughlin*, 173

7  Cal. App. 4th 156, 179 (2009)).  Plaintiff cites no authority, nor has the court found any, for the

8  proposition that the remaining allegations of its FAC, including defendant's opening of the

9  account and not closing or freezing the account, could satisfy these necessary elements of

10  plaintiff's restitution and accounting claims once the ACH payments themselves are removed

11  from consideration.  Instead, it is clear that "the gravamen of each of [plaintiff's] *causes of action*

12  against the Bank . . . is the same:  The Bank should not have accepted and executed the fraudulent

13  payment orders." *Zengen, Inc.*, 41 Cal. 4th at 254 (emphasis added).  As discussed above, any

14  such cause of action is displaced by division 11.

15      Therefore, the undersigned concludes that to the extent customers paid the third-party

16  fraudster using ACH payments, plaintiff's claims for restitution and accounting are displaced by

17  the California Commercial Code, division 11.[1]

18  /////

19

20  [1]  The court acknowledges that, based on the allegations of the FAC, plaintiff likely also cannot
state a claim against defendant bank pursuant to the California Commercial Code, division 11.
Section 11207 "provides a safe harbor from liability for beneficiary banks that process wire
21  transfers [and other funds transfers] based on the beneficiary account number provided in the
transfer instructions." *BPi Bright Power, Inc.*, 669 F. Supp. 3d at 906.  "The safe harbor applies
22  so long as the beneficiary bank does not know that the beneficiary's name and account number
refer to different persons." *Id.* (citation omitted).  This provision embodies the legislature's
23  choice to immunize banks from liability for the actions of third-party fraudsters except in limited
24  circumstances.  Still, although the remaining choices are problematic for both business and
practical reasons, plaintiff may be able to recover the funds from parties other than defendant
25  bank.  If plaintiff's customers, the originators of the ACH payments, were in the best position to
prevent the fraud, then plaintiff would have grounds to recoup the payments from them. *Thomas
26  v. Corbyn Rest. Dev. Corp.*, 111 Cal. App. 5th 439, 453 (2025) ("[T]he risk of loss from an
imposter's fraudulent diversion of a wire transfer shall be borne by the party in the best position
27  to prevent the fraud.").  Alternatively, plaintiff could sue the third-party fraudster directly to
28  recover the diverted payments.

7

1          2.      Checks

2          As defendant acknowledges in its motion to dismiss, checks, unlike ACH payments, are

3    covered by the California Commercial Code, division 3.  *Jozefowicz v. Allstate Ins. Co.*, 35 Cal.

4    App. 5th 829, 834 (2019) ("A check is a negotiable instrument, subject to article 3 of the

5    California Uniform Commercial Code.").  Therefore, the court will also examine whether the

6    California Commercial Code also displaces plaintiff's claims to the extent they are premised on

7    payments made by way of checks.[2]

8          "Unless displaced by the particular provisions of" the California Commercial Code, "the

9    principles of law and equity . . . supplement its provisions."  Cal. Com. Code § 1103(b).  "[I]f the

10   Commercial Code articulates a loss distributive scheme that applies to fact patterns such as

11   alleged herein, then the Commercial Code provision displaces any other provision of law."

12   *Stenseth v. Wells Fargo Bank*, 41 Cal. App. 4th 457, 466 (1995) (citation omitted); *see also*

13   *Fireman's Fund Ins. Co. v. Sec. Pac. Nat. Bank*, 85 Cal. App. 3d 797, 827 (1978) ("Noting that

14   section 3418 articulates a loss distributive scheme that is applicable to the fact pattern as alleged

15   herein (forged drawer's signature), we further find that this section displaces an action for

16   common law negligence."); *Love Sys. Inc. v. U.S. Bank, N.A.*, No. 12-cv-06186-DMG-PLA, 2012

17   WL 13013051, at *2 (C.D. Cal. Dec. 11, 2012) ("The California Commercial Code specifically

18   contemplates a loss distribution scheme that displaces Plaintiff's negligence and common count

19   causes of action.").

20         The California Commercial Code, division 3, articulates a loss distributive scheme that

21   applies to fact patterns, like the one at issue here, where "an imposter . . . induces the issuer of an

22   instrument," such as a check, "to issue the instrument to the imposter," here the third party, "by

23   impersonating the payee of the instrument," here plaintiff.  Cal. Com. Code § 3404(a).  In such

24   circumstances, "if a person paying the instrument or taking it for value or for collection," here

25   defendant bank, "fails to exercise ordinary care in paying or taking the instrument and that failure

26   contributes to loss resulting from payment of the instrument, the person bearing the loss may

27   —————————————————

28   [2]  In its opposition to the pending motion, plaintiff does not address the applicability of division 3, discussing only division 11.  (Doc. No. 17 at 5–6.)

1    recover from the person failing to exercise ordinary care to the extent the failure to exercise

2    ordinary care contributed to the loss." Cal. Com. Code § 3404(d). "The imposter rule is a

3    defense provided to banks that pay or collect on a check due to an impersonation." *Menda v.*

4    *Golden 1 Credit Union*, No. C048465, 2005 WL 2476204, at *3 (Cal. Ct. App. Oct. 7, 2005).[3] It

5    limits the bank's liability to circumstances in which the bank failed to exercise ordinary care.

6    Cal. Com. Code § 3404(d).

7        Because "the Commercial Code articulates a loss distributive scheme that applies to fact

8    patterns such" as the one alleged by plaintiff here, "the Commercial Code provision displaces"

9    plaintiff's common law claims to the extent they are premised on payment by check. *Stenseth*, 41

10   Cal. App. 4th at 466 (citation omitted). Because divisions 3 and 11 of the California Commercial

11   Code together displace plaintiff's common law claims in their entirety, plaintiff's claims must be

12   dismissed.[4]

13   /////

14

_____

15   [3] The court may consider unpublished California Court of Appeal decisions. *See Magadia v. Wal-Mart Assocs., Inc.*, 999 F.3d 668, 681 n.12 (9th Cir. 2021) ("Although these [California
16   Court of Appeal] decisions are unpublished with no precedential value, we may still consider them to interpret California law.").
17

18   [4] Moreover, plaintiff's claim for an accounting will also be dismissed because plaintiff has not alleged the requisite relationship between plaintiff and defendant. *Sass*, 10 Cal. 5th at 869
19   (quoting *Teselle*, 173 Cal. App. 4th at 179). Plaintiff argues without support that defendant intended to create a fiduciary relationship with plaintiff when it opened an account in plaintiff's
20   name. (Doc. No. 17 at 7.) However, banks "are not fiduciaries for their depositors." *Chazen v. Centennial Bank*, 61 Cal. App. 4th 532, 537 (1998) (citation omitted); *see also Derakhshan v.*
21   *Wells Fargo Bank, N.A.*, No. 2:23-cv-05900-MRA-PD, 2024 WL 5256488, at *6 n.7 (C.D. Cal. Oct. 22, 2024) (same). Further, "[i]t has long been regarded as axiomatic that the relationship
22   between a bank and its depositor arising out of a general deposit is that of a debtor and creditor." *Chazen*, 61 Cal. App. 4th at 537. Although a fiduciary relationship is not required to obtain an
23   accounting, the relationship between a debtor and creditor is not, without more, a qualifying relationship for purposes of obtaining an accounting. *See Robinson v. Bank of Am.*, No. 12-cv-
24   00494-RMW, 2012 WL 1932842, at *1, *2, *10 (N.D. Cal. May 29, 2012) (finding persuasive the defendant's argument that the requisite relationship between the plaintiff and the defendant
25   did not exist and dismissing the plaintiff's accounting claim even where the defendant bank owed the plaintiff money due to excess mortgage payments); *Canales v. Fed. Home Loan Mortg. Corp.*,
26   No. 11-cv-02819-PSG-VBK, 2011 WL 3320478, at *8 (C.D. Cal. Aug. 1, 2011) (finding that the relationship between debtor and creditor is not a qualifying relationship for purposes of an
27   accounting).

28

1    **B.       Whether to Grant Leave to Amend**

2         Leave to amend should be granted "freely" when justice so requires.  Fed. R. Civ.

3    P. 15(a).  The Ninth Circuit maintains a policy of "extreme liberality generally in favoring

4    amendments to pleadings."  *Rosenberg Bros. & Co. v. Arnold*, 283 F.2d 406, 406 (9th Cir. 1960).

5    Reasons "such as undue delay, bad faith or dilatory motive . . .  repeated failure to cure

6    deficiencies . . . undue prejudice to the opposing party . . . [or] futility" may support denial of

7    leave to amend.  *Foman v. Davis*, 371 U.S. 178, 182 (1962).  A district court "should grant leave

8    to amend even if no request to amend the pleading was made, unless it determines that the

9    pleading could not possibly be cured by the allegation of other facts."  *Cook, Perkiss and Liehe,*

10   *Inc. v. N. Cal. Collection Servs.*, 911 F.2d 242, 247 (9th Cir. 1990).

11         Here, plaintiff has not requested further leave to amend, (Doc. No. 17), and has already

12   had one opportunity to amend its complaint, (Doc. No. 13).  However, in its January 7, 2025

13   order, the court did not have cause to address whether the California Commercial Code displaced

14   plaintiff's claims.  (*Id.*)  Therefore, plaintiff has not had an opportunity to cure the defects noted

15   in this order.  While the court doubts that plaintiff will be able to cure the identified defect

16   regarding the California Commercial Code, the court cannot definitively conclude that

17   amendment in this regard would be futile.

18         In contrast, the court's January 7, 2025 order alerted plaintiff to a deficiency regarding its

19   accounting claim, and plaintiff has failed to cure this deficiency in its FAC.  Under such

20   circumstances, the court "can only conclude that" plaintiff is "either unwilling or unable to

21   properly plead" its accounting cause of action such "that the granting of further leave to amend

22   would be futile."  *Cota v. Liberty Mut. Ins.*, No. 1:18-cv-00133-DAD-JLT, 2018 WL 4786943, at

23   *4 (E.D. Cal. Oct. 3, 2018) ("Despite the court's prior order setting out instructions and guidance

24   . . . , the deficiencies that the court previously identified remain uncorrected in the FAC.").

25   Therefore, while the court will dismiss plaintiff's claim for restitution with leave to amend,

26   plaintiff's claim for an accounting will be dismissed without further leave to amend.

27   /////

28   /////

1 **CONCLUSION**

2     For the reasons explained above,

3     1.     Defendant's motion to dismiss (Doc. No. 16) is GRANTED as follows:

4         a.     Plaintiff's first claim for restitution is DISMISSED with leave to amend;

5         b.     Plaintiff's second claim for an accounting is DISMISSED without leave to

6             amend; and

7     2.     Within twenty-one (21) days from the date of entry of this order, plaintiff shall file

8         either a second amended complaint, or a notice of its intent not to file a second

9         amended complaint.

10     IT IS SO ORDERED.

11 Dated:    **August 8, 2025**                                _Dale A. Drozd_

12                                         DALE A. DROZD
                                          UNITED STATES DISTRICT JUDGE
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28